SARAH J. CARLTON, executrix &c.,

*v.*

THE VINELAND WINE COMPANY.

A bond and mortgage on lands, and also a bill of sale of chattels, were given to secure the payment of a debt.—*Held,* that parol evidence which was inconsistent with the terms of a contemporaneous agreement in writing between the parties, in regard to the disposition of the mortgaged chattels to pay the mortgage, was incompetent.

Bill to foreclose. On final hearing on pleadings and proofs.

*Mr. L. Newcomb,* for complainant.

*Mr. W. A. House,* for defendant.

THE CHANCELLOR.

The payment of the complainant's mortgage debt is secured by a bill of sale of over thirteen thousand gallons of wine, and the casks containing them, and a mortgage of certain real estate in Vineland, and the bill of complaint is filed for foreclosure and sale of both wine and land. The bill of sale and mortgage were respectively given by the Vineland Wine Company to

Thomas J. Carlton, the complainant's testator, in November, 1878. When they were given, an agreement in writing, under seal, was made and delivered by and between the company and Carlton, by which, after reciting that the company had made the bill of sale to Carlton for the wine and casks (which it was thereby stated were then set apart to him in the cellar of the company), as security for the payment of the mortgage debt ($8,000) in eighteen months from that date, with interest, it was agreed that the wine was to be stored and taken care of by the company free of expense, for the eighteen months, unless it should be sooner sold, and that Alexander W. Pearson, president of the company, should be, and he was thereby appointed, irrevocably, the agent of Carlton for the eighteen months (provided he should act in accordance with the agreement) to sell and dispose of the wine in such quantities as he might choose, and, as fast as it should be sold, to pay to Carlton the sum of sixty-eight cents per gallon therefor, or secure the payment thereof by approved security before the wine should be removed from the cellar ; that Pearson might reserve out of the sales the excess over and above the sixty-eight cents per gallon for the company as its compensation for storing, selling and taking care of the wine. And Pearson thereby agreed for the company to take care of and keep the wine up to its then standard and not to allow it to deteriorate in value, and also to use all diligence in selling it. And it was thereby agreed that Carlton should have free access to the wine at all reasonable times, for the purpose of inspection, and that as soon as enough of it should be sold to pay the debt and interest the rest should be reconveyed to the company. It was also expressly agreed that the wine should be insured to the amount of $8,000, and the loss made payable by the policy to Carlton. The defence set up by the answer is that it was agreed between the parties that the company should, if it should not be able to sell the wine in the eighteen months, have such further time as would be reasonably necessary for the purpose, and that Carlton, in June, 1879 (before the eighteen months had expired), surreptitiously got possession of the cellar, and forcibly excluded Pearson from it, and thenceforward refused to permit

Carlton *v.* Vineland Wine Co.

him to take care of the wine or to sell it, denied his right to sell at all, and would not permit him to show the wine to persons desiring to purchase, and would not permit it to be inspected at all by, or shown to anybody, prevented Pearson from carrying on the legitimate business of the company, and gave him a notice dated May 13th, 1880, revoking the authority to sell given by the agreement, and forbidding him to remove, handle or dispose of any of the wine. The answer claims damages to the amount of $4,000 for injury to the wine by the before-mentioned refusal of access to it, and asks for further time to sell it to raise the money which the court may determine is equitably due on the mortgage. The proof does not sustain the answer. It appears that Pearson was not at any time denied access to the wine, but, on the contrary, had free access to it at all times, and was fully at liberty to take all necessary and proper measures to preserve it. It also appears that he was never prevented from carrying on the business of the company on the premises, was never prevented from showing the wine, and that inspection was never denied to persons proposing to purchase; that Carlton, for the protection of the property against theft, was compelled to keep a watchman on the premises, and that his executrix, in the spring of 1880, was compelled to get the property insured at the expense of the estate, and in November of the same year was compelled to buy in the mortgaged real estate at a sale thereof for the unpaid taxes of 1879 thereon; that Carlton was willing, while the agency lasted, that Pearson should sell any quantity of the wine from any cask, provided he would take care of the remainder in the cask, and keep it in good condition, and that Carlton did not give the notice of revocation until July 16th, 1880, almost two months after the expiration of the period of eighteen months. It is further proved that the wine is all in good condition except one cask, which was spoiled by Pearson's drawing eleven gallons out of it for his own purposes, in November, 1879, and supplying their place with sweetened water. All the evidence on the subject of the verbal understanding alleged to have been had before and when the agreement was made in reference to allowing further time beyond

the eighteen months for the sale of the wine is, for ob-
vious reasons, wholly incompetent. The witnesses to it, Mr.
Pearson and Mr. House, say the understanding was that if the
eighteen months should prove not to be long enough, the time
for payment would be extended until the wine should be sold.
In the first place, the mortgage money is made payable in
eighteen months, and the contemporaneous agreement in writing
provides that the president of the company shall, for the same
time, have power to sell the mortgaged chattels to pay off the
mortgage. In the answer, it is said that when the bond and
mortgage and bill of sale were given it was understood and
agreed that the bond and mortgage were not to be paid until the
wine covered by the bill of sale could be sold. All the evidence
on this subject is parol testimony, and is in contrariety to the
bond and mortgage and written agreement, and is therefore in-
competent. *French* v. *Griffin, 3 C. E. Gr. 279.* There will be
a decree in accordance with the views above expressed.